In the Matter of **GLOSTEX PRODUCTS, INC., Bankrupt.**

**S. Harvey KLEIN, Trustee of the bankrupt, Appellant,**

v.

**Irving HERMAN, Appellee.**

No. 13304.

United States Court of Appeals Seventh Circuit.

Oct. 18, 1961.

Rehearing Denied Nov. 16, 1961.

Thomas D. Nash, Jr., Robert M. Ahern, Chicago, Ill., for appellant.

Bernard M. Kaplan, Blanksten & Lansing, Chicago, Ill., for respondent-appellee; Harold S. Lansing, Chicago, Ill., of counsel.

Before HASTINGS, Chief Judge, and KNOCH and KILEY, Circuit Judges.

HASTINGS, Chief Judge.

This bankruptcy proceeding originated on April 22, 1957 when Glostex Products, Inc. filed its petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq. On that date an order was entered permitting debtor to continue in possession of its property, and operate its business. On the same date a supplemental order was entered requiring debtor to segregate and deposit in a separate bank account all moneys withheld from employees' wages for taxes.

By order of April 29, 1957 debtor was authorized to borrow money from National Acceptance Company with which to carry on its business. In return National Acceptance Company received a first lien on all assets of debtor, including present or future accounts receivable.

Debtor fully complied with the order concerning taxes withheld from employees' wages through December, 1957. There was no segregation and deposit of these moneys for January, February and March, 1958.

Debtor was adjudicated a bankrupt on April 21, 1958. Irving Herman was the general manager and the only active executive of debtor, Glostex Products, Inc.

After adjudication of bankruptcy, the District Director of Internal Revenue sought an allowance of $9,634.18, representing withholding taxes for the three months when they were not deposited, as a special trust fund for the United States. Although the exact amount of the taxes was in dispute, the propriety of the Director's claim was conceded and is not questioned here. In response to the Director's claim, the trustee sought an order requiring Irving Herman to pay the amount of the claim of the United States for the withholding taxes. At the hearing which followed, the undisputed testimony of Herman disclosed that during the three months when the withholding taxes were not deposited, the financial affairs of debtor were virtually controlled by National Acceptance Company. All disbursements were subject to approval

by this finance company. All checks drawn on debtor's account were subject to prior approval by National. In February, National began to open debtor's mail and withdraw all checks. Herman testified that when he requested funds from National with which to pay withholding taxes he was told that it would be taken care of. He admitted that he had never written a check with which to deposit the taxes nor had he been ordered not to do so. Nevertheless, it is apparent that Herman entertained a belief that National would not allow the taxes to be paid.

As a result of the hearing, the referee found that Herman, as operating head of debtor, had deliberately failed to segregate and deposit the withholding taxes and ordered him to pay to the estate or the Director of Internal Revenue the amount necessary to satisfy the claim of the United States.

On petition for review, the district court construed the referee's order as a turnover order and held that the requisite possession upon which to premise such an order had not been shown. The district court, therefore, vacated the referee's order. It is this decision which is in question here.

The trustee contends that Herman was a fiduciary with respect to the operation of the debtor in possession, that he breached his duty by failing to deposit the withholding taxes, and is thus personally liable for the amount due the United States. Herman contends that the district court was correct in its construction of the referee's order as a turnover order, and that the requisite possession has not been shown.

Initially, then, it must be determined whether the referee's order was a turnover order. In Maggio v. Zeitz, 1948, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476, the Court speaks of a turnover order as being a remedy. Whether or not the order in the instant case is a turnover order is to be determined by the nature of the remedy contemplated by the order. The trustee's amended petition prayed for an

order directing Herman to pay and, upon default, for a rule upon Herman to show cause why he should not be held in contempt. The referee's order directed Herman to pay the claim of the United States, and the trustee presumably, would have initiated a contempt proceeding had not the district court vacated the order. This is the exact remedy that was before the Court in Maggio which involved a contempt proceeding for failure to obey what is conceded to be a turnover order. Furthermore, here the parties considered the proceeding before the referee as a turnover proceeding. In a colloquy between counsel for Herman and the referee, the proceeding is referred to as "turnover." The trustee did not object to such denomination. We hold that the district court did not err in determining that the proceeding before the referee was a turnover proceeding resulting in a turnover order.

Further, Maggio v. Zeitz, supra, holds that a person against whom a turnover order has been directed may show in a subsequent contempt proceeding that he is presently unable to comply due to present lack of possession. In the instant case there was no allegation that Herman possessed the money in question nor was there proof that he had such possession. In discussing the history and nature of turnover orders the Court in Maggio pointed out that such orders were fashioned by bankruptcy courts to aid in proper administration by summarily retrieving the assets of the estate. Turnover orders are analogized to common law actions for the recovery of possession, and the Court concludes by stating: "It is in no sense based on a cause of action for damages for tortious conduct such as embezzlement, misappropriation or improvident dissipation of assets." Id. 333 U.S. at page 63, 68 S.Ct. at page 405. It follows that a turnover order may not issue without a showing of possession. 2

Collier, Bankruptcy § 23.10, p. 538 (14th ed. 1956).

In its memorandum opinion the district court further found and determined [190 F.Supp. 540]:

"The debtor [Herman] in the instant case is not accused of withdrawal of funds for his personal use. It is charged he used money for the purchase of merchandise from suppliers when he should have set aside some of the funds for taxes. The record is clear he derived no personal gain and in fact disbursed the money he received. This debtor [Herman] can not be ordered to turn over that which he does not possess.

"The record of this case discloses that from April 1957 through December 1957 the debtor [Herman] fully complied with the order of the Referee on witholding and social security taxes. It further shows that commencing in January the finance company reduced the amount of money being advanced to the debtor [Herman] and that it exercised control over the manner of its disbursement, hampering the debtor [Herman] in the exercise of his discretion as to the allocation to be made of the moneys so advanced. Considering the entire record, this court is of the opinion that the debtor [Herman] should have brought this situation to the attention of the court earlier, but that this omission was not a deliberate and willful defiance of the Referee's order." 1

Our consideration of the record in this proceeding leads us to conclude that the district court did not err in so finding.

■ Under the circumstances of this case, we hold that there was no willful breach of any fiduciary duty by Herman.

The order of the district court appealed from is affirmed.

---

1. The record discloses that the order to segregate and hold separate the witholding taxes was entered by the district court, acting through Judge J. S. Perry, on April 22, 1959, and not by the Referee.